This is the third time this case has been before this Court. The issue now concerns postjudgment interest.
Daisey L. Johnson's action against the Life Insurance Company of Georgia resulted in a jury verdict awarding Ms. Johnson $250,000 in compensatory damages and $15 million in punitive damages. The trial court entered a judgment on that verdict on June 2, 1994. At that time, the parties agreed that interest on the punitive damages portion of the judgment would be waived for 30 days to allow the trial court to rule on various posttrial motions filed by Life of Georgia. In disposing of those motions, the trial court remitted the punitive damages award to $12.5 million. On appeal, this Court affirmed, on the condition that Ms. Johnson accept a remittitur of the punitive damages award to $5 million. Life Ins. Co. of Georgia v. Johnson, 684 So.2d 685
(Ala. 1996) (Johnson I).
Following this Court's ruling in Johnson I, life of Georgia conceded its obligation to pay the compensatory damages portion of the judgment. On June 18, 1996, Life of Georgia tendered to Ms. Johnson's counsel a check in the amount of $306,142.60, in satisfaction of the $250,000 compensatory damages portion of the judgment, plus interest accrued on that amount through May 18, 1996. Ms. Johnson accepted the money, without objection, but did not sign any document indicating that the check was accepted as partial satisfaction of the entire judgment.
Meanwhile, Life of Georgia sought certiorari review by the United States Supreme Court, contending that the punitive damages award violated the Due Process Clause of the Fourteenth Amendment to the United States Constitution. On October 15, 1996, the United States Supreme Court granted Life of Georgia's petition for certiorari review, vacated the judgment of this Court, and remanded the case for reconsideration in light of that Court's opinion in BMW of North America v. Gore, 517 U.S. 559,116 S. Ct. 1589, 134 L.Ed.2d 809 (1996). Life Ins. Co. of Georgia v.Johnson, ___ U.S. ___, 117 S. Ct. 288, 136 L.Ed.2d 207 (1996) (memorandum). On remand, this Court issued an opinion, on August 15, 1997, again affirming the trial court's judgment, conditioned upon Ms. Johnson's accepting a remittitur of the punitive damages award to $3 million, alternatively ordering a new trial should she fail to accept that amount. Life Ins. Co. of Georgia v.Johnson, 701 So.2d 524 (Ala. 1997) (Johnson II). On August 20, 1997, Ms. Johnson accepted the remittitur of the punitive award. On August 21, 1997, Life of Georgia tendered to Ms. Johnson checks for $3 million and $986.30, in satisfaction of the punitive damages award and the interest accruing upon it from August 20 to August 21, 1997. This Court issued its certificate of judgment on September 3, 1997, which provided in pertinent part: "IT IS NOW CONSIDERED, ORDERED AND ADJUDGED that the judgment of the circuit court for punitive damages be reduced to $3,000,000 and, as thus reduced, the judgment of the circuit court is hereby affirmed, with interest and costs."
Thereafter, a dispute arose between the parties regarding postjudgment interest. On September 8, 1997, Ms. Johnson filed in the circuit court a motion pursuant to Rule 65.1, Ala. R. Civ. P., to "calculate interest, enter judgment and enforce surety's liability to pay $1,129,315 in accrued interest," claiming that Life of Georgia and its sureties still owed interest in that amount on the $3 million punitive damages award from June 2, 1994, the date the trial court entered its judgment. On September 11, 1997, Life of Georgia filed in the circuit court an objection to Ms. Johnson's motion and filed a motion requesting this Court to amend its September 3, 1997, certificate of judgment to specify that postjudgment interest began accruing on August 20, 1997, the date Ms. Johnson filed her acceptance of the remittitur. On September 18, 1997, Ms. Johnson filed in the circuit court a supplemental motion, contending that the payment of $306,142.60 on June 18, 1996, and the payments of $3 million and $986.30 *Page 937 
on August 21, 1997, should be applied first to interest on the entire $3.25 million judgment, leaving a principal balance of $1,167,278.45, which, she claimed, continued to accrue interest at 12% per annum.
On September 22, 1997, the trial court issued an order stating in relevant part as follows:
 "The Court finds that as of this date, Life of Georgia, Safeco Insurance Company of America, and General Insurance Company of America [the latter two companies being the sureties on the supersedeas bond] still owe $1,167,278.45 in principal, with an additional $10,142.74 in interest to date, for a total sum of $1,177,421.19. This calculation takes into consideration Life of Georgia's three previous partial payments. Additionally, interest continues to accrue at 12% per annum on the $1,167,278.45 principal balance remaining."
This order adopted Ms. Johnson's position that interest on the judgment began accruing on June 2, 1994, the date of the original judgment on the jury's verdict, but was suspended for 30 days pursuant to the parties' agreement; thus, the trial court calculated interest beginning July 2, 1994. The trial court's order also accepted Ms. Johnson's argument that Life of Georgia's payments on June 18, 1996, and August 21, 1997, were "partial payments" to be applied first to interest and then to principal on the entire amount of the judgment, without respect to any division of the judgment as to punitive versus compensatory damages. Thus, the trial court's order held as ineffective Life of Georgia's attempt to stop the accrual of interest on the compensatory damages portion of the judgment via its $306,142.60 payment on June 18, 1996.
Life of Georgia appeals the trial court's order. Life of Georgia has also filed a motion to consolidate its appeal with its motion of September 11, 1997, requesting this Court to amend its September 3, 1997, certificate of judgment. We grant the motion to consolidate, and we consider together the appeal and the motion to amend the certificate of judgment.
 I
Life of Georgia concedes that 12% per annum postjudgment interest applies to the punitive damages award.[1] However, it maintains that interest began to accrue on August 20, 1997, the date upon which Ms. Johnson filed her acceptance of the remittitur of the punitive damages award following our decision in Johnson II, rather than on July 2, 1994 (30 days after the entry of the original judgment), as the trial court held. In fact, Life of Georgia asserts that the trial court had no authority to enter an order awarding postjudgment interest before August 20, 1997, because this Court's certificate of judgment, while allowing Ms. Johnson to recover "interest," did not specify the date on which interest would begin to accrue.
In support of its position, Life of Georgia directs our attention to a line of federal decisions emanating from the United States Supreme Court's ruling in Briggs v. PennsylvaniaR.R., 334 U.S. 304, 68 S. Ct. 1039, 92 L.Ed. 1403 (1948). The plaintiff in Briggs obtained a jury verdict awarding money damages, but the trial court held that the defendant was, as a matter of law, entitled to a judgment of dismissal. The court of appeals reversed and directed the trial court to reinstate the jury's verdict and to enter a judgment in favor of the plaintiff, but the appellate court's mandate made no mention of interest. The Supreme Court held that the trial court was bound to follow the mandate of the appellate court and was therefore powerless to award interest for the period before the entry of the judgment on remand, *Page 938 
where the appellate court's mandate did not authorize such action. 334 U.S. at 307-08.
Life of Georgia also emphasizes the importance of Ala. R.App. P. 37, which provides:
 "Unless otherwise provided by law, if a judgment for money in a civil case is affirmed or the appeal is dismissed, whatever interest is provided by law shall be payable from the date the judgment was entered in the trial court. If a judgment is modified or reversed with a direction that a judgment for money be entered in the trial court, the certificate of judgment shall contain instructions with respect to allowance of interest."
This rule is virtually identical to the federal rule, F.R.App. P.37, and this Court has noted that an interpretation of a federal rule is persuasive authority for our interpretation of a corresponding state rule. See, e.g., Smith v. MBL Life Assur.Corp., 604 So.2d 406, 407-08 (Ala. 1992). The Advisory Committee's Comments to F.R.App. P. 37 state:
 "The second sentence of [Rule 37] is a reminder to the court, the clerk and counsel of the Briggs rule. . . . [A] party who conceives himself entitled to interest from a date other than the date of entry of judgment in accordance with the mandate should be entitled to seek recall of the mandate for determination of the question."
See also DeLong Equipment Co. v. Washington MillsElectro Minerals Corp., 997 F.2d 1340, 1341 (11th Cir. 1993) (stating that Rule 37, F.R.App. P., "codifies" the result inBriggs).
Life of Georgia claims that, for the purposes of Ala. R.App. P. 37, our judgment in Johnson II, affirming the trial court's judgment, conditioned upon Ms. Johnson's accepting a remittitur, effectively "modified" the trial court's initial judgment "with a direction that a judgment for money be entered in the trial court." Life of Georgia contends that the second sentence of Ala. R.App. P. 37 is therefore applicable. And because this Court's certificate of judgment did not specify that interest awarded was to be calculated based upon the initial trial-court judgment of June 2, 1994, Life of Georgia argues that, under the Briggs rule, the trial court, on remand, was without authority to calculate interest until Ms. Johnson first petitioned this Court to amend its certificate of judgment.
We must consider the Briggs rule and Ala. R.App. P. 37 along with controlling statutes. The Alabama legislature, unlike the Congress, has directly addressed this issue. Section 12-22-71, Ala. Code 1975, provides:
 "When an appeal is taken to the appropriate appellate court from the judgment of any court and the appellate court shall be of the opinion that the case should be reversed because the judgment of the lower court is excessive and that there is no other ground of reversal, the appellate court shall notify the appellee of the amount which it deems in excess of the just and proper amount of recovery and require the appellee, within a time to be stated in said notice, to remit such amount upon penalty of a reversal of the case. If the appellee does not, within the time stated in such notice or within such further time as may be granted by the court for good reason file a remittitur of such excessive amount, the appellate court shall reverse and remand the case; but, if the appellee shall file with the court a remittitur of the amount deemed excessive of the court the appellate court shall reduce the amount of the judgment accordingly and shall affirm the case and enter a judgment for such reduced amount, which judgment so entered shall be and remain the judgment of the lower court and shall date back to the time of the entry or rendition of the judgment in the lower court."
(Emphasis added). It has long been the rule in Alabama that where, pursuant to this section, an appellate court affirms a judgment based upon an appellee's accepting a remittitur of excessive damages, interest on the reduced amount is to be calculated from the date of the rendition of the judgment in the trial court. See, e.g., Louisville N. R.R. v. Parker, 223 Ala. 626,138 So. 231 (1931); United States Fidelity Guaranty Co. v.Millonas, 206 Ala. 147, 89 So. 732 (1921); Montgomery Iron Worksv. Capital City Ins. Co., 162 Ala. 420, 50 So. 358 (1909). *Page 939 
Indeed, this Court has held that when an appellate court affirms a money judgment but alters the amount due, the total sum so fixed bears interest from the date of the trial court's judgment, even without an express provision to that effect, because that is the "legal effect" of the affirmance. Kinney v.Pollak, 225 Ala. 229, 231, 142 So. 390 (1932). Thus, subsequent action by an appellate court in reducing a judgment does not prevent interest from attaching upon the reduced amount and running from the date of the original judgment. Lowe v. GeneralMotors Corp., 527 F. Supp. 54 (N.D. Ala. 1981). See also Schultev. Smith, 708 So.2d 138 (Ala. 1997) (holding that postjudgment interest began to accrue on a remitted damages award on the date of the trial court's original judgment, where this Court held, on the plaintiff's appeal, that a statutory damages limitation the trial court had applied to the plaintiff's award was unconstitutional, and, on the defendants' appeal, that the jury's damages award was excessive); Smith v. MBL Life Assur. Corp.,604 So.2d 406 (Ala. 1992) (holding that when a judgment is affirmed on appeal postjudgment interest accrues from the initial entry of a money judgment, as if no appeal had been taken, even if the delay in payment partially results from the plaintiff's appeal from a JNOV granted in favor of the defendant as to a portion of the jury's verdict).
In this case, the trial court entered a final judgment in favor of Ms. Johnson on her fraud claims. On appeal, this Court affirmed that judgment, conditioned upon Ms. Johnson's accepting a remittitur of the punitive damages to $3 million. She filed an acceptance of that remittitur. By the operation of § 12-22-71, our judgment entered in Johnson II for the reduced amount "[was] and remain[ed] the judgment of the lower court and . . . date[d] back to the time of the entry or rendition of the judgment in the lower court." Accordingly, there was no necessity for this Court to give the trial court a "direction that a judgment for money be entered in the trial court." We agree with Life of Georgia that Rule 37, Ala. R.App. P., must be read inpari materia with § 12-22-71; cf. Burlington Northern R.R. v.Whitt, 611 So.2d 219 (Ala. 1992) (Rule 37 must be read in parimateria with § 8-8-10, Ala. Code 1975). However, for the purposes of Rule 37, our action in Johnson II is deemed, under § 12-22-71, to have "affirmed" the judgment of the trial court, rather than to have "modified" it with a direction to enter a money judgment. Thus, under Rule 37, Ala. R.App. P., interest on Ms. Johnson's judgment would have been "payable from the date the judgment was entered in the trial court" — June 2, 1994. Parker, Millonas; Montgomery Iron Works, supra. The parties, however, agreed to suspend the accrual of interest on the punitive damages portion of the judgment for 30 days, until July 2, 1994. Therefore, the trial court correctly concluded that postjudgment interest on the remitted $3 million punitive damages award is to be calculated from July 2, 1994.
We also note that Briggs and the other federal cases cited by Life of Georgia are distinguishable from the instant case. The federal cases involve situations where there was no valid judgment on a plaintiff's successful claim until a judgment was entered by the trial court on remand, in compliance with an appellate mandate. In several cases, the appellate court simply reversed a judgment entered by the trial court in favor of the defendant and directed the trial court to enter a judgment for the plaintiff on remand, see Briggs, supra; Indu Craft, Inc v.Bank of Baroda, 87 F.3d 614 (2d Cir. 1996); Affiliated CapitalCorp. v. City of Houston, 793 F.2d 706 (5th Cir. 1986); see alsoDeLong, supra (appellate court ordered reinstatement of a jury verdict for the plaintiff, after the trial court had granted the defendant's motion for a new trial). In other cases, the appellate court "modified" a trial court's judgment in favor of the plaintiff, so as effectively to invalidate the judgment entered below. See Leroy v. City of Houston, 906 F.2d 1068 (5th Cir. 1990) (appellate court held that the plaintiffs had not been entitled to recover on the claim upon which the trial court had entered the judgment, but that they should have prevailed upon other claims the trial court erroneously denied); Gele v. Wilson,616 F.2d 146 (5th Cir. 1980) (appellate court "modified" the trial court's judgment by directing the trial court to reallocate fault for *Page 940 
damages and directed the entry of a new judgment). Accordingly, without a valid prior judgment on a successful claim, there was no existing obligation in favor of the plaintiff for the defendant to satisfy, and no interest could be said to have accrued. In contrast, the trial court in this present case entered a judgment in favor of Ms. Johnson on her fraud claims, thereby creating an obligation on the part of Life of Georgia. Pursuant to § 12-22-71, this Court affirmed and its judgment related back to the date the trial court had entered its judgment, validating Life of Georgia's preexisting obligation. Life of Georgia is not entitled to relief on this ground.
 II
Life of Georgia next argues that the October 15, 1996, memorandum order of the United States Supreme Court, which granted Life of Georgia's petition for certiorari review, vacated the judgment, and remanded the case to this Court for reconsideration, had the effect of nullifying the punitive damages award from its inception. Therefore, Life of Georgia argues, there was no valid punitive damages judgment until this Court issued its opinion on remand. We disagree.
The Supreme Court's action had the effect of nullifying only this Court's Johnson I judgment affirming conditionally the trial court's judgment. The Supreme Court's order did not void the underlying judgment entered by the trial court. This is evident from the fact that Ms. Johnson was not required upon remand to secure a second judgment in the trial court. Rather, the Supreme Court's mandate directed this Court to reconsider the propriety of the judgment the trial court had entered on June 2, 1994. SeeJohnson II, 701 So.2d at 525 ("On certiorari review, the Supreme Court of the United States vacated this Court's judgment and remanded this case for us to determine whether the punitive damages awarded in this case are reasonable under the guidelines established by the Supreme Court in BMW of North America Inc. v.Gore . . . .") (emphasis added). Life of Georgia's argument on this ground is due to be rejected.
 III.
Life of Georgia next argues that the trial court's order incorrectly authorizes the recovery of postjudgment interest under the supersedeas bond. Life of Georgia points out that the terms of the bond stipulate that the obligation assumed in the bond is to "satisfy such judgment, penalties, and costs, including such costs of appeal as may be awarded . . . ." Life of Georgia argues that the bond does not specifically mention "interest" and, therefore, does not create an obligation on the part of the surety to pay postjudgment interest.[2]
In Hudson v. Hudson, 555 So.2d 1084 (Ala.Civ.App. 1989), the Court of Civil Appeals encountered an argument similar to that now advanced by Life of Georgia. In Hudson, the wife in a divorce case was found to be in contempt of court for her failure to deed certain property to the husband pursuant to a divorce judgment. In order to prosecute her appeal, the wife posted a supersedeas bond in which she agreed to "satisfy such judgment, penalties, costs, including costs of appeal as may be rendered in this case"; that is substantially the same language appearing in the bond in the instant case. After a judgment in favor of the husband, the husband sued on the bond to recover attorney fees incurred, depreciation, interest on the value of the land, taxes, and interest on the mortgage debt during the time that the wife unlawfully retained title to the land. The wife argued that "because `attorney fees,' `taxes,' `interest,' and `expert witness fees' were not specifically designated as damages recoverable under the bond, the husband [could] not recover these as `costs of appeal.'" 555 So.2d at 1085. The Court of *Page 941 
Civil appeals rejected the wife's argument, recognizing that the purpose for requiring the bond is "`to keep the parties in statu quo pending the appeal. The purpose, we now say, reached not only to possession of the property, but every other consequence of the judgment, including costs, and the evidential status and value of the judgment pending appeal.'" Hudson, 555 So.2d at 1085-86, quoting Fidelity Deposit Co. of Maryland v. Torian, 221 Ala. 131,133, 127 So. 829, 831 (1930), and citing other cases. The Court of Civil Appeals upheld the award of the items sought by the husband, concluding that under Rule 8, Ala. R. App. P., it was not required that the specific items of "damages" be set out in the supersedeas bond. Hudson, 555 So.2d at 1085-86.
We conclude that the trial court correctly held that the supersedeas bond imposed liability upon the sureties for interest on the judgment principal. Under Hudson, the accrued interest might be considered to be included within the "costs of appeal." Further, the supersedeas bond provided that the sureties promised to "satisfy such judgment . . . as may be awarded." The "judgment" of this Court on appeal in Johnson II was that Ms. Johnson was entitled to recover $3 million in punitive damages, with interest." Thus, the bond obligated the sureties to "satisfy" that "judgment." We find no error in this regard.
 IV.
Life of Georgia argues that the trial court ruled erroneously regarding the application of "partial payments" on Ms. Johnson's judgment. Following our decision in Johnson I, Life of Georgia, on June 18, 1996, tendered a check for $306,142.60 to Ms. Johnson's counsel. With this check was a letter stating, in pertinent part:
 "I am transmitting herewith payment, including interest through May 18, 1996, of the compensatory damages portion of the judgment awarded to your client against . . . Life of Georgia.
 "In satisfying the compensatory portion of the award, Life of Georgia reserves its right to challenge the constitutionality of the punitive damages portion of the judgment."
It is undisputed that Ms. Johnson accepted the check without reservation or objection. It is also uncontested that Ms. Johnson did not sign any document regarding the application of the funds to the judgment debt and that no credit or partial satisfaction of judgment was entered on the record.
The trial court concluded that Life of Georgia's payment did not satisfy the compensatory damages portion of the judgment and was not even to be considered a partial payment of compensatory damages. Rather, the court accepted Ms. Johnson's argument that the check constituted a partial payment that, pursuant to §8-8-11, Ala. Code 1975, was due to be applied first to the interest that had accrued upon the entire $3.25 million judgment ($3 million punitive + $250,000 compensatory) for the period from July 2, 1994 (30 days following the entry of judgment) until June 18, 1996 (the date of Life of Georgia's payment), without respect to any division between the compensatory and punitive portions of the judgment. Thus, the trial court held that Life of Georgia's payment did not operate to halt the accrual of interest upon any portion of the judgment principal. Life of Georgia maintains, however, that Ms. Johnson accepted the $306,142.60 check as payment toward the compensatory damages award plus interest accruing thereon and, therefore, Life of Georgia claims, she waived her right to argue that the payment should be deemed, retrospectively, merely a partial payment on the entire judgment.
Whether Life of Georgia's payment on June 18, 1996, was to be applied to interest and principal as to the compensatory damages portion of the award or to the interest that had accrued on the entire judgment award raises what appear to be questions of first impression in Alabama. However, it has elsewhere been recognized:
 "[I]f an appellant has no complaint with a part of a judgment for money damages, he remains free to satisfy that part by paying [it]. . . . Thus, any appellant has means at his disposal to prevent the accrual of interest on that portion of a money judgment *Page 942 
about which he does not claim error on appeal."
Bassett v. Eagle Telecommunications, Inc.,750 P.2d 73, 77 (Colo.App. 1987).
We see no reason why a defendant who concedes his liability as to a portion of a judgment should not be able to make payments toward satisfying, and halting the accrual of interest upon, that part while his appeal of another part of the judgment is pending. Life of Georgia's correspondence to Ms. Johnson expressly stated that the payment of $306,142.60 was for the conceded liability regarding the compensatory damages award. Ms. Johnson accepted this payment without reservation. It is unmistakable that both Ms. Johnson and Life of Georgia at that time considered the payment to be applicable to the compensatory damages award, plus the interest accrued thereon. We conclude that the trial court erred when it failed to apply the payment in that manner. It is true that, absent a contract to the contrary, when a partial payment on a debt is made, the payment is to be first applied on the amount of interest due and the balance applied on the principal. Selman v. Bryant, 261 Ala. 53, 58, 72 So.2d 704, 708
(1954); De Moville v. Merchtants Farmers Bank of Greene County,237 Ala. 347, 186 So. 704 (1939); § 8-8-11, Ala. Code 1975. However, the question here is whether the parties intended Life of Georgia's payment to be credited to the compensatory damages portion of the judgment, as opposed to the punitive damages portion. We conclude, given the evidence in this case, that they did, and the trial court should have treated the payment in accordance with the parties' intentions.
Ms. Johnson argues that she never signed a partial satisfaction of judgment as to the compensatory award and that no acknowledgment of satisfaction of that award was entered on the record. She asserts, therefore, that Life of Georgia's payment should not be credited toward the compensatory damages award. However, she concedes that she received Life of Georgia's letter explaining the purpose of the payment and that she accepted the check without objection and deposited it. Where it is undisputed that payment has been received, a judgment may be satisfied notwithstanding that a formal entry of satisfaction has not been entered on the record. Butler v. GAB Business Services, Inc.,416 So.2d 984 (Ala. 1982). It undoubtedly would have been preferable for the parties to make an express agreement regarding the application of the payment to the compensatory damages award and to enter a satisfaction on the record; however, we conclude that their failure to do so should not, under the facts of this case, prevent Life of Georgia's payment from being credited toward the compensatory damages award, as the parties clearly intended. Thus, we reverse the judgment of the trial court insofar as it did not apply Life of Georgia's payment of $306,142.60 toward the amount owed on the compensatory damages portion of the award.[3]
 V.
Finally, Life of Georgia claims that an award of postjudgment interest dating from July 2, 1994, on the $3 million punitive damages award is impermissibly punitive and violates the Due Process Clause of the Fourteenth Amendment. Life of Georgia argues that to uphold an award of such interest would be to exact a penalty for successfully challenging a constitutional wrong; to exact such a penalty would, Life of Georgia asserts, violate "`[e]lementary notions of fairness enshrined in our constitutional jurisprudence,'" appellant's brief at 30, quotingBMW, supra, 517 U.S. at 574. Life of Georgia also contends that an award of such interest would violate its right to due process because, it says, the interest award would bear no rational *Page 943 
relationship to the legitimate state interests at issue.
Life of Georgia cites no authority holding that an award of postjudgment interest from the date of the entry of the initial judgment on a later-remitted damages award is a denial of due process. Indeed, we can find no such case. However, Life of Georgia is charged with knowledge of the law and was therefore on notice that under Rule 37, Ala. R. App. P, and §§ 8-8-10 and12-22-71, and under cases interpreting that rule and those statutes, postjudgment interest is deemed to accrue on a remitted damages award from the date of the original judgment in the trial court. Cf. County of Los Angeles v. Salas, 38 Cal.App.4th 510,45 Cal.Rptr.2d 61 (1995) (defendant was charged with knowledge that California law provided for postjudgment interest on a child support arrearage; thus the defendant's due process "notice" claim was invalid). Indeed, it is apparent from the record that Life of Georgia's counsel had actual knowledge that postjudgment interest began to accrue on the punitive damages award as soon as the trial court entered its judgment on the jury's verdict.
We also note that, contrary to Life of Georgia's argument, postjudgment interest on the punitive damages award is not "punitive" in nature, except perhaps insofar as an award of interest operates to assure that the civil punishment assessed against Life of Georgia is not weakened by the mere passage of time. Postjudgment interest is, rather, "just compensation to ensure that a money judgment will be worth the same when it is actually received as when it was awarded." Dunn v. HOVIC,13 F.3d 58, 60 (3d Cir. 1993); see also Elmore County Comm'n v. Ragona,561 So.2d 1092, 1093-94 (Ala. 1990). The State has interests in ensuring that valid judgments are paid promptly and that a punishment assessed against a civil defendant is not diluted by inflation and the passage of time. We recognize that a defendant who appeals a damages award as excessive is in somewhat of a difficult position to the extent that the principal amount upon which postjudgment interest is deemed to have accrued may not be finally ascertainable until after the appeal is final. Thus, the exact amount due is clearly, in some sense, unliquidated during the appeal process, and the defendant will be unable to know how much he must pay to halt the accrual of all postjudgment interest. This situation has been exacerbated in the instant case because appellate litigation has been so substantial and extended. However, it must also be recalled that the plaintiff is not at fault for the delay in receiving payment and that it is she who has secured a judgment for the payment of money as the result of the defendants' wrongdoing. Interest would begin to accrue on Ms. Johnson's entire judgment once it was entered in the trial court; the effect of our ruling here simply allows interest to accrue only to the extent that the damages award was valid. We also note that other federal and state courts have granted postjudgement interest on remitted damages awards based upon the date of the entry of the original judgment. See, e.g.,Dunn, supra; Coal Resources, Inc. v. Gulf Western Industries,Inc., 954 F.2d 1263 (6th Cir. 1992); Varney v. Taylor, 81 N.M. 87, 463 P.2d 511 (1969); Atlantic Coast Line R.R. v. Watkins,99 Fla. 395, 126 So. 489 (1930); see also Klein v. Grynberg, 127 F.3d 1109 (10th Cir. 1997) (table) (No. 96-1255, Oct. 20, 1997) (opinion not reported in F.3d). We hold that the trial court's order awarding postjudgment interest on the punitive damages award from July 2, 1994, does not violate the right to due process.
In conclusion, we affirm the trial court's determination that interest on Ms. Johnson's punitive damages award began to accrue on July 2, 1994, notwithstanding the United States Supreme Court's subsequent order vacating this Court's judgment inJohnson I. We also affirm the trial court's conclusions that an award of postjudgment interest from July 2, 1994, does not violate the Due Process Clause and that the supersedeas bond obligates the sureties for such postjudgment interest. We reverse the trial court's order, however, to the extent that it applied Life of Georgia's $306,142.60 payment on June 18, 1996, toward the interest accrued upon the entire $3.25 million judgment. We hold that the trial court should have credited that payment toward the compensatory damages portion of the judgment, as the parties intended. *Page 944 
This case is remanded for the trial court to recalculate postjudgment interest in a manner consistent with this opinion.
MOTION TO CONSOLIDATE GRANTED; AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
HOOPER, C.J., and ALMON, HOUSTON, KENNEDY, COOK, and LYONS, JJ., concur.
MADDOX and SEE, .JJ., concur in part, concur in the result in part, and dissent in part.
[1] Justice Maddox has previously opined in dissent to the denial of an application for rehearing that postjudgment interest should not accrue on a punitive damages award. See AmericanPioneer Life Ins. Co. v. Williamson, 681 So.2d 1040 (Ala. 1995) (Maddox, J., dissenting). However, we note that postjudgment interest on judgments for the payment of money is mandatory under § 8-8-10, Ala. Code 1975, which provides: "Judgments for the payment of money . . . shall bear interest at the rate of 12 percent per annum . . . from the day of entry." Further, because Life of Georgia did not argue the point, we would not hold the trial court in error on that point.
[2] Ms. Johnson claims that Life of Georgia's argument on this issue "is largely moot" because "[all money remaining due on August 21, 1997 — some $1,129,315 — was judgment principal, since the $3 million payment was used to pay accrued interest first." Appellee's brief at 15 n. 5. However, the trial court's order expressly states that "interest continues to accrue at 12% per annum on the $1,167,278.45 principal balance remaining." Because the trial court's order would impose liability upon the sureties to pay interest, we do not agree that the issue is moot.
[3] We do not here decide whether Life of Georgia's payment of $306,142.60 is to be considered as satisfaction of the $250,000 compensatory award plus all interest accrued thereon to the date of payment or is to be considered merely a partial payment on the compensatory award, applied first to accrued interest and then to principal, § 8-8-11, Ala. Code 1975. The trial court did not rule on the matter and that matter has not been fully briefed in this Court. We note however, that the record is somewhat unclear as to this issue, because Life of Georgia's letter states that the payment included interest on the compensatory award "through May 18, 1996," rather than through June 18, 1996, the date of the payment.