I conclude that the trial court properly calculated postjudgment interest in this case; therefore, I must dissent.
In Elmore County Commission v. Ragona, 561 So.2d 1092 (Ala. 1990), our supreme court concluded that because the condition placed on Ragona's acceptance of the funds paid by the defendants placed the funds out of Ragona's reach, the amount paid into the court could not be said to have satisfied the judgment. As discussed below, I conclude that in this case the *Page 546 
funds paid into the court on BPC's behalf or by BPC were similarly out of the reach of Cosgrove.
In Schulte v. Smith, 708 So.2d 138 (Ala. 1997), our supreme court held that postjudgment interest was due on the amount of the judgment as remitted but that the postjudgment interest began to accrue as of the date of the original judgment. In that case, the defendants had made two payments toward their total liability; one of those payments was made while the matter was on appeal, and our supreme court denied the plaintiffs' motion to have those funds released to him. The court noted that on application for rehearing the plaintiff-appellant argued that postjudgment interest should have been deemed to accrue on the payment that was made while the matter was first on appeal because he had been unable to "unconditionally exercise control over the funds" until the disposition of the appeal. Schulte v.Smith, 708 So.2d at 141 n. 2. Our supreme court declined to address that issue, however, because it was impermissibly raised for the first time on application for rehearing. Id.
A more recent opinion, cited by Cosgrove throughout his brief in defense of the trial court's judgment, also discusses an award of postjudgment interest and provides precedent under which I conclude the trial court's judgment is due to be affirmed. SeeLife Ins. Co. of Georgia v. Johnson, 725 So.2d 934 (Ala. 1998) (hereinafter "Johnson III"). In that case, the trial court entered on June 2, 1994, a judgment on the jury's verdict awarding Johnson $250,000 in compensatory damages and $15 million in punitive damages. The parties agreed to suspend the accrual of postjudgment interest for 30 days, i.e., until July 2, 1994. The trial court later remitted the punitive-damages award to $12.5 million. Our supreme court affirmed the judgment on the condition that Johnson accept a remittitur of the punitive-damages award to $5 million. Life Ins. Co. of Georgia v. Johnson, 684 So.2d 685
(Ala. 1996) ("Johnson I"). The United States Supreme Court remanded the case to our supreme court for reconsideration of the punitive-damages award. Life Ins. Co. of Georgia v. Johnson,519 U.S. 923, 117 S.Ct. 288, 136 L.Ed.2d 207 (1996). Our supreme court then affirmed the judgment on the condition that Johnson accept $3 million as punitive damages. Life Ins. Co. of Georgiav. Johnson, 701 So.2d 524 (Ala. 1997) ("Johnson II"). On August 20, 1997, Johnson accepted the remittitur. On June 18, 1996, after the court's holding in Johnson I, Life of Georgia paid into the trial court $306,142.60 in satisfaction of the compensatory-damages award; that amount represented the $250,000 damages award plus postjudgment interest that had accrued up to that date. Johnson accepted the money without objecting and without indicating that the money was in partial satisfaction of the judgment. After the release of Johnson II, on August 21, 1997, Life of Georgia paid into the trial court $3 million, plus a separate check for $986.30, which it contended was the postjudgment interest due on the punitive-damages award; that amount represented postjudgment interest for the one-day period between the date of Johnson's August 20, 1997, acceptance of the remittitur and its August 21, 1997, payment.
A dispute arose between the parties regarding the proper amount of postjudgment interest due. Johnson argued that the $306,142.60 payment made on June 18, 1996, should be credited as a payment of interest, and that postjudgment interest should be calculated, from the date of the original judgment, on the remainder of the entire $3.25 million award. The trial court agreed with Johnson and entered a judgment accordingly. Johnson III, supra. *Page 547 
Our supreme court held, among other things, that postjudgment interest on the punitive-damages award began to accrue on July 2, 1994 (the agreed-upon 30th day after the entry of the original judgment), because although the effect of the appellate courts' holdings was to modify the amount of the punitive-damages award, those holdings did not affect Life of Georgia's liability for punitive damages. Johnson III, supra. In so holding, the court stated:
 "[T]his Court has held that when an appellate court affirms a money judgment but alters the amount due, the total sum so fixed bears interest from the date of the trial court's judgment, even without an express provision to that effect, because that is the `legal effect' of the affirmance. Thus, subsequent action by an appellate court in reducing a judgment does not prevent interest from attaching upon the reduced amount and running from the date of the original judgment."
Johnson III, 725 So.2d at 939.
Also in Johnson III, supra, our supreme court reversed that part of the trial court's judgment that found that the June 18, 1996, payment was not a satisfaction of the compensatory-damages portion of the original, June 2, 1994, judgment. In doing so, the court resolved the issue it had declined to address in Schultev. Smith, supra. The court noted that the evidence indicated that the parties intended the June 18, 1996, payment to satisfy the compensatory-damages portion of the judgment. The supreme court determined that because Life of Georgia had conceded liability for the compensatory-damages portion of the June 2, 1994, judgment, Life of Georgia should be allowed to pay that part of the judgment and to prevent the accrual of additional postjudgment interest on that part of the judgment for which itconceded its liability. Johnson III, 725 So.2d at 942. In so holding, the court stated:
 "Whether Life of Georgia's payment on June 18, 1996, was to be applied to interest and principal as to the compensatory damages portion of the award or to the interest that had accrued on the entire judgment award raises what appear to be questions of first impression in Alabama. However, it has elsewhere been recognized:
 "`[I]f an appellant has no complaint with a part of a judgment for money damages, he remains free to satisfy that part by paying [it]. . . . Thus, any appellant has means at his disposal to prevent the accrual of interest on that portion of a money judgment about which he does not claim error on appeal.'
 "Bassett v. Eagle Telecommunications, Inc., 750 P.2d 73, 77 (Colo.App. 1987).
 "We see no reason why a defendant who concedes his liability as to a portion of a judgment should not be able to make payments toward satisfying, and halting the accrual of interest upon, that part while his appeal of another part of the judgment is pending."
Johnson III, 725 So.2d at 941-42 (emphasis added).
I believe that the precedent of Johnson III is dispositive of this case. The main opinion cites no authority for its holding that the accrual of postjudgment interest is tolled if funds are paid into the court and are (purportedly) available to the party who prevailed at trial, as long as that party's access to the funds is not accompanied by a condition that does not arise from the judgment itself. Even assuming, however, that that holding is a valid statement of Alabama law, I believe that the application of that holding to the facts of this case supports affirming the trial court's judgment.
In this case, the funds were paid into the trial court by the garnishee, not by BPC. *Page 548 
That fact is significant because the garnishee paid the funds into the trial court in order to discharge its responsibility under the garnishment order, not in an effort to satisfy BPC's liability under the April 26, 2002, judgment. Further, at the time BPC moved the trial court to have the judgment declared satisfied, BPC was still prosecuting its appeal from the April 26, 2002, judgment in our supreme court. I agree with the main opinion that BPC, in moving for an order declaring the judgment satisfied, placed no express condition on Cosgrove's acceptance of the $150,276 deposited into the court by the garnishee. However, I must conclude that BPC implied a condition on Cosgrove's receipt of the funds deposited into the trial court — namely, it did so by impliedly stating that Cosgrove would receive the $150,276 subject to the condition that he would have to repay the funds is BPC prevailed on appeal. BPC did not concede its liability for damages under the April 26, 2002, judgment until the release of the supreme court's judgment inBirmingham Pain Center, Inc. v. Cosgrove (No. 1012012, May 23, 2003), 883 So.2d 271 (Ala. 2003) (table).
Had BPC prevailed in its appeal, under the main opinion's holding, BPC would, in all likelihood, have asserted a claim against Cosgrove for the return of the funds. In that event, would the main opinion impose on Cosgrove (the party who prevailed at trial but lost on appeal) the obligation to pay BPC interest on the use of the money paid or deposited on BPC's behalf? I believe that the result imposed by the main opinion shifts the risk and a potential burden on the party that prevailed at the trial court.
In Johnson III, supra, our supreme court held that because Life of Georgia had conceded its liability as to the compensatory-damages portion of the judgment and had paid funds to satisfy that portion of the judgment, the accrual of postjudgment interest on that portion of the judgment had ceased, even during the time in which Life of Georgia was prosecuting its appeal of another portion of the judgment. Thus, in that case, because Life of Georgia's liability under the compensatory-damages portion of the judgment was no longer contested, the plaintiff had available to her the amount due under the compensatory-damages portion of the judgment in her favor. There was no possibility that the plaintiff would have to return or repay the funds representing compensatory damages. The main opinion concludes that Cosgrove similarly had the proceeds of the April 26, 2002, judgment available to him. However, I cannot agree that those funds were truly available to Cosgrove because BPC was still, as it prosecuted its appeal, contesting its liability for those damages. Given the holding of JohnsonIII, I would hold that BPC could not both prosecute an appeal in which it contended it was not liable for damages under the April 26, 2002, judgment and at the same time be entitled to halt the accrual of postjudgment interest by paying into the trial court, or having another entity pay on its behalf pursuant to a garnishment order, amounts toward a judgment for which it contested its liability.
The main opinion did not address BPC's argument that the trial court's judgment punishes it for exercising its right to appeal and that it lost the use of the funds paid pursuant to the garnishment order. Our supreme court rejected a similar argument in Johnson III, supra, and, in doing so, stated:
 "Postjudgment interest is . . . `just compensation to ensure that a money judgment will be worth the same when it is actually received as when it was awarded.' . . . The State has interests in ensuring that valid judgments are paid promptly and that a punishment assessed against a civil defendant is not *Page 549 
diluted by inflation and the passage of time. We recognize that a defendant who appeals a damages award . . . is in somewhat of a difficult position. . . . However, it must also be recalled that the plaintiff is not at fault for the delay in receiving payment and that it is she who has secured a judgment for the payment of money as the result of the defendants' wrongdoing."
Johnson III, 725 So.2d at 943. Given the foregoing, I would reject BPC's argument that the trial court's judgment is punitive. I would affirm the trial court's judgment.
YATES, P.J., concurs.