25 So.3d 427 (2009)
Edward Craig JONES and Donald Chasteen
v.
REGIONS BANK and Advanced Realty Company, Inc.
1060896.
Supreme Court of Alabama.
June 12, 2009.
*429 David O. Upshaw and J. Christopher Miller of Ogle, Liles & Upshaw, LLP, Birmingham, for appellants.
W. Clark Watson and Ed R. Haden of Balch & Bingham, LLP, Birmingham, for appellee Regions Bank.
Jack Lee Roberts, Jr., of Turnbach, Warren, Roberts & Lloyd, P.C., Gadsden, for appellee Advanced Realty Company, Inc.
BOLIN, Justice.
Edward Craig Jones and Donald Chasteen (hereinafter collectively referred to as "the plaintiffs") appeal from the trial court's denial of their various motions to alter, amend, or vacate the court's judgment against them or to clarify the judgment and seeking an attorney fee and expenses.

Facts and Procedural History
The plaintiffs extended credit to Scott Sheffield for the purchase of certain real property and took a mortgage in return to secure their interests. Regions Bank also extended credit to Sheffield for the purchase of the same real property and also took a mortgage to secure its interest. The plaintiffs' mortgage was recorded on February 22, 1995, in mortgage book 3118, page 252, in the office of the Judge of Probate of Etowah County. Regions Bank's mortgage was also recorded on February 22, 1995, in mortgage book 3118, page 247, in the office of the Judge of Probate of Etowah County.
On May 19, 1998, the plaintiffs purchased at a foreclosure sale instituted by the plaintiffs the real property secured by the mortgage issued to them by Sheffield. The plaintiffs purchased the property by crediting Sheffield's indebtedness secured by the mortgage in the amount of $58,501.25. Regions Bank also foreclosed on the mortgage issued to it by Sheffield. On August 24, 1998, Advanced Realty Company, Inc. ("Advanced Realty"), purchased the real property in question for $58,350 at a foreclosure sale instituted by Regions Bank.
On October 8, 1998, the plaintiffs sued Regions Bank and Advanced Realty, among others, alleging that Sheffield had granted them a purchase-money mortgage; that the real property had been sold to them at a foreclosure sale because of Sheffield's default under the mortgage taken on the property by Regions Bank; and that they had received a foreclosure deed. The plaintiffs sought a judgment declaring that the mortgage executed by Sheffield in favor of them had priority over the mortgage executed in favor of Regions Bank; that the foreclosure sale pursuant to which the plaintiffs purchased the real property eliminated any interest Regions Bank previously held in the property; and that the foreclosure sale and deed by which Advanced Realty purportedly purchased the real property was without legal effect.
On November 16, 1998, Regions Bank answered the complaint and asserted a counterclaim seeking a judgment declaring that its mortgage had priority over the plaintiffs' mortgage and that the plaintiffs' mortgage was subordinated to the Regions Bank mortgage. On that same date, Advanced Realty answered the complaint and also asserted a counterclaim seeking a *430 judgment declaring that the mortgage granted to Regions Bank had priority over the plaintiffs' mortgage; that the foreclosure by Regions Bank was valid and enforceable; and that the purchase of the real property by Advanced Realty at the foreclosure sale held by Regions Bank had the effect of transferring full legal title to the real property to Advanced Realty.
On August 11, 2000, the plaintiffs amended their complaint to allege that they were the legal and rightful owners of the real property; that Regions Bank and Advanced Realty had willfully and wantonly continued to exercise dominion and control over the real property; that Advanced Realty had been renting the real property to a third party; and that any funds obtained by Advanced Realty under its rental arrangement rightfully belong to the plaintiffs. The plaintiffs adopted and incorporated into this amended complaint the averments and allegations contained in the declaratory-judgment complaint by which they claimed legal title to the real property by virtue of the purchase-money mortgage and the foreclosure deed.
In the amended complaint, the plaintiffs sought from Regions Bank and Advanced Realty both compensatory damages and punitive damages on their claim alleging a willful and wanton exercise of dominion over the property. Additionally, the plaintiffs sought from Advanced Realty the recovery of any funds obtained by virtue of its renting the property to a third party and further sought the imposition of a constructive trust on any funds obtained by Advanced Realty by virtue of its renting the property to a third party. On September 5, 2000, Regions Bank and Advanced Realty answered the plaintiffs' amended complaint.
On October 25, 2000, the plaintiffs amended their complaint a second time to again allege that they were the legal owners of the real property at issue by virtue of the purchase-money mortgage and the foreclosure deed. Attached to this pleading were copies of the purchase-money mortgage and the foreclosure deed, which contained a legal description of the real property. The plaintiffs sought immediate possession of the property and asserted a claim against Regions Bank and Advanced Realty for the fair rental value of the property during the time Regions Bank and Advanced Realty were in possession of the property. The plaintiffs also alleged that they were entitled to mesne profits from Regions Bank and Advanced Realty during the time Regions Bank and Advanced Realty possessed the property.[1]
On May 31, 2001, Regions Bank and Advanced Realty answered the plaintiffs' second amended complaint. On that same date both Regions Bank and Advanced Realty moved the trial court for a partial summary judgment as to the counts in the plaintiffs' amended complaints alleging ownership of the real property and that Regions Bank and Advanced Realty had willfully and wantonly exercised dominion and control over the property. Both Regions Bank and Advanced Realty treated this latter claim as one alleging trespass. Regions Bank and Advanced Realty argued that a trespass claim does not lie because, they argued, the plaintiffs have failed to establish that they had actual possession of the property and that Regions Bank and Advanced Realty intentionally trespassed upon the property.
On October 11, 2001, the plaintiffs filed an opposition to Regions Bank and Advanced Realty's motion for a partial summary judgment. The plaintiffs argued *431 that a trespass claim is actionable under § 6-5-212, Ala.Code 1975, which provides that "[t]he bare right of possession to lands authorizes their recovery by the owner of such right and also damages for the withholding of the right." The plaintiffs argued that they maintained a claim to the rightful possession of the property based on the purchase-money mortgage and the foreclosure deed; therefore, they contended that they were entitled to pursue a cause of action arising out of trespass.
Following an ore tenus proceeding, the trial court, on June 2, 2004, entered the following judgment in favor of the plaintiffs ("the final judgment"):
"This case having come before the undersigned for trial and after considering the evidence and arguments presented by counsel, hereby ORDERS, ADJUDGES, AND DECREES as follows:
"1. The foreclosure deed whereby [the plaintiffs] purchased the real property at issue, recorded at Book 1998, Page 139 (Doc. # D-1998-1969) in the Probate Court of Etowah County, is valid and title to the property is properly vested in [the plaintiffs].
"2. The Mortgage given to [Regions Bank] at Book 3118, Page 247 was and is inferior to the mortgage granted to [the plaintiffs] recorded at Book 3118, Page 252 and thus the foreclosure deed whereby Advanced [Realty] purportedly purchased the real estate from Regions [Bank], recorded at Book 1998, Page 239 (Doc. # D-1998-3500), is a nullity, is void, and is without legal effect.
"3. [The plaintiffs] are further entitled to, and do hereby recover from, the Defendant, Advanced Realty Co., Inc., the sum of $52,325.25 in compensatory damages, based upon the reasonable rental value of the property at issue, plus $850.00 cash [per] month plus accrued interest from March 2003 to June 1, 2004.
"4. [The plaintiffs] are further entitled to and do hereby recover from the Defendant Advanced Realty Co., Inc., the sum of $1,000.00 in punitive damages;[[2]]
"5. [The plaintiffs] are further entitled to and do hereby recover from the Defendants, Regions Bank and Advanced Realty Co., Inc., jointly and severally the sum of $188.00 in court costs.
"6. The relief requested in the Counterclaims filed by the Defendants/Counterclaim-plaintiffs, Regions Bank and Advanced Realty Co., Inc. is hereby denied."
On June 30, 2004, Regions Bank and Advanced Realty moved the trial court to alter, amend, or vacate the final judgment and/or for a new trial arguing, among other things, that the trial court's finding that the plaintiffs' mortgage had priority over Regions Bank's mortgage was erroneous; that the trial court's finding that they had exercised willful and wanton dominion over the property and its award of punitive damages based on that finding was not supported by the facts of the case; and *432 that the trial court's judgment did not give Advanced Realty credit for improvements made to the property. On September 7, 2004, the trial court entered an order denying the postjudgment motion.
Regions Bank and Advanced Realty appealed the final judgment to this Court on October 7, 2004. On that same date the trial court stayed execution of the final judgment and approved a supersedeas bond posted by Regions Bank and Advanced Realty in the amount of $83,891.56.[3] Regions Bank is designated on the bond as the "Appellant-Principal"; Advanced Realty is designated on the bond as the "Surety." On November 9, 2004, this Court, pursuant to § 12-2-7(6), Ala. Code 1975, transferred the case to the Court of Civil Appeals. On July 22, 2005, the Court of Civil Appeals affirmed the final judgment in favor of the plaintiffs, without an opinion. Regions Bank v. Chasteen (No. 2040137), 954 So.2d 3 (Ala.Civ.App.2005)(table). The Court of Civil Appeals issued a certificate of judgment on July 22, 2005. The costs of the appeal were taxed against Regions Bank and Advanced Realty pursuant to Rule 35, Ala. R.App. P.
On August 5, 2005, Regions Bank and Advanced Realty petitioned this Court for a writ of certiorari, which this Court granted on November 4, 2005. On July 14, 2006, this Court issued an order quashing the writ (case no. 1041719). On July 17, 2006, the certificate of judgment issued by the Court of Civil Appeals was transmitted to the trial court.
On July 26, 2006, the plaintiffs, pursuant to Rule 8(c), Ala. R.App. P., filed a motion entitled "Motion to Enforce Liability and Judgment on Supersedeas Bond," seeking to enforce the final judgment.
The plaintiffs argued that they were entitled to $70,765.89, which they claimed represented the full monetary value of the final judgment (compensatory damages of $52,325.25 + $12,750 (representing $850 per month of rent from March 2003 through June 1, 2004) + $1,000 in punitive damages + $188 court costs + $4,502.64 of accrued prejudgment interest from March 1, 2003 through June 1, 2004).[4] Additionally, the plaintiffs claimed that they were entitled to postjudgment interest of $17,979.96 on the above sum (excluding court costs) calculated at the statutory rate of 12% from June 2, 2004  the date of the final judgment  through July 17, 2006  the date the Court of Civil Appeals' certificate of judgment was transmitted to the trial court. Thus, the total amount sought by the plaintiffs in this motion was $88,745.85. Regions Bank and Advanced Realty surrendered possession of the real property to the plaintiffs on July 31, 2006.
On October 4, 2006, the plaintiffs filed a motion entitled "Motion to Clarify And/Or Augment Final Judgment Entered June 2, 2004." The plaintiffs sought additional damages at the rate of $850 per month plus interest from October 7, 2004  the date execution of the final judgment was *433 stayed  until July 17, 2006  the date the Court of Civil Appeals' certificate of judgment was transmitted to the trial court and the stay of execution of the final judgment was lifted. The plaintiffs contended that the posting of the supersedeas bond stayed the execution of the final judgment, including their repossession and use of the real property. The plaintiffs argued that they were entitled to damages for the period they were excluded from their property while the case was pending on appeal and the execution of the final judgment was stayed.
On October 17, 2006, Regions Bank moved the trial court to discharge the supersedeas bond and satisfy the final judgment against it. Regions Bank contemporaneously paid into the trial court registry $83,891.56, the full amount of the supersedeas bond. Regions Bank sought in its motion an order from the trial court (1) discharging the supersedeas bond and the obligations of all surety under the bond, (2) deeming the final judgment against Regions Bank to be fully paid and satisfied, and (3) authorizing the disbursement by the trial court clerk of the deposited funds.
On November 7, 2006, the plaintiffs moved the trial court to condemn the funds paid into the trial court by Regions Bank and filed a motion in opposition to Regions Bank's motion seeking to discharge the supersedeas bond and to satisfy the final judgment. The plaintiffs sought an order from the trial court immediately releasing to them the funds that had been paid into the trial court by Regions Bank. Additionally, the plaintiffs contended that the total amount of the final judgment, including the postjudgment interest to which they were entitled, was $88,745.85, which exceeded the amount of the supersedeas bond. Relying upon McBarnett v. Breed, 6 Ala. 476 (1844), and Windham v. Coats, 8 Ala. 285 (1845), the plaintiffs argued that because Regions Bank was designated on the supersedeas bond as the "Appellant-Principal," it was liable for the total amount of the judgment and costs of the action even if that sum exceeds the amount of the supersedeas bond. Additionally, the plaintiffs, relying upon Hudson v. Hudson, 555 So.2d 1084 (Ala.Civ. App.1989), contended that "costs" included the attorney fees they had incurred in successfully resisting Regions Bank and Advanced Realty's appeal. The plaintiffs argued that Regions Bank was not entitled to a satisfaction of the judgment until it had paid to them the moneys they claimed in excess of the $83,891.56 supersedeas bond that had been paid into the trial court by Regions Bank.
On November 8, 2006, the plaintiffs specifically moved the trial court for an order awarding them an attorney fee and expenses of $22,931.34, which they claimed to have incurred in successfully defending Regions Bank and Advanced Realty's appeal. The plaintiffs argued that Regions Bank, as the "Appellant-Principal," was liable for the costs of the action  including the attorney fees on appeal  even if that amount exceeded the total amount of the supersedeas bond.
On November 22, 2006, the trial court entered an order granting Regions Bank's motion to discharge the supersedeas bond and to satisfy the final judgment as to Regions Bank. The trial court discharged the supersedeas bond and terminated the liability of all sureties under the bond. The trial court also ordered that all Regions Bank's liability to the plaintiffs under the final judgment had been satisfied.
On December 19, 2006, the plaintiffs moved the trial court to alter, amend, or vacate its order of November 22, 2006, discharging the supersedeas bond and noting as satisfied the final judgment against *434 Regions Bank. The plaintiffs also moved the trial court to set for a hearing: (1) their motion for an attorney fee and expenses incurred in successfully defending the appeal, and (2) their motion to "Clarify And/Or Augment the Final Judgment" entered on June 2, 2004.
On December 20, 2006, the trial court entered an order stating that all Advanced Realty's liability to the plaintiffs arising under the final judgment had been satisfied. On December 28, 2006, the plaintiffs moved the trial court to alter, amend, or vacate its order of December 20, 2006, satisfying the final judgment as to Advanced Realty. The plaintiffs argued that a motion to satisfy the final judgment as to Advanced Realty was not made in accordance with Rule 7(b)(1), Ala. R. Civ. P., and that they were not properly served with a copy of the motion in accordance with Rule 5, Ala. R. Civ. P. Additionally, the plaintiffs contended that when postjudgment interest is added to the amount of the final judgment, the total final-judgment liability exceeds the amount of the supersedeas bond paid into the trial court by Regions Bank. The plaintiffs contended that Advanced Realty may be due a credit on the amount owed under the final judgment by virtue of the amount of the supersedeas bond paid into the trial court but that Advanced Realty was not entitled to a satisfaction on the final judgment until the full amount of the final judgment had been paid.
On February 1, 2007, the trial court entered an order setting all pending motions for a hearing. Following a hearing, the trial court, on February 20, 2007, entered an order denying all the plaintiffs' pending motions.
On March 9, 2007, the plaintiffs moved the trial court to alter, amend, or vacate its order of February 20, 2007, denying all of their pending motions. Citing § 6-6-293, Ala.Code 1975, the plaintiffs again argued that they were entitled to postjudgment damages for lost rent plus interest in the amount of $24,552.25.[5] On March 13, 2007, the trial entered an order denying this motion. The plaintiffs appeal.

Standard of Review
This Court has stated:
"`[W]hen a trial court hears ore tenus testimony, its findings on disputed facts are presumed correct and its judgment based on those findings will not be reversed unless the judgment is palpably erroneous or manifestly unjust.' Philpot v. State, 843 So.2d 122, 125 (Ala. 2002). `However, where the facts before the trial court are essentially undisputed and the controversy involves questions of law for the court to consider, the court's judgment carries no presumption of correctness.' Allstate Ins. Co. v. Skelton, 675 So.2d 377, 379 (Ala.1996). Questions of law are reviewed de novo. BT Sec. Corp. v. W.R. Huff Asset Mgmt. Co., 891 So.2d 310 (Ala.2004)."
Alabama Republican Party v. McGinley, 893 So.2d 337, 342 (Ala.2004).

I. The November 22, 2006, Order Satisfying the Final Judgment as to Regions Bank
The plaintiffs argue that the amount of the final judgment to which they are entitled *435 exceeds the amount of the supersedeas bond paid into the trial court by Regions Bank and that, therefore, that the trial court erred in entering its order satisfying the final judgment as to Regions Bank because, they say, the final judgment has not been fully satisfied. They contend that Regions Bank as the "Appellant-Principal" under the supersedeas bond is liable for the total amount of the judgment and costs of the action, including attorney fees, even if that sum exceeds the amount of the supersedeas bond.
The plaintiffs contend that under Alabama law a third-party surety's liability may properly be limited to the amount of the supersedeas bond but that an "Appellant-Principal" has potentially greater liability under the supersedeas bond. The plaintiffs specifically rely upon McBarnett v. Breed, 6 Ala. 476 (1844), and Windham v. Coats, 8 Ala. 285 (1845), for their contention that Regions Bank, as the "Appellant-Principal" on the supersedeas bond, is liable for the total amount of the judgment and costs of the action even though that sum may exceed the amount of the supersedeas bond.
In McBarnett, McBarnett sued Breed in a court presided over by a justice of the peace, and a judgment was entered in favor of Breed. McBarnett executed a bond and appealed the judgment to the circuit court. Kerr was designated as the surety on the appeal bond. The circuit court also entered a judgment in favor of Breed. The judgment provided that Breed recover from McBarnett and Kerr, as the surety, the costs of the action. This Court stated:
"In Quinn v. Adair, 4 Ala. 315 [(1842) ], we held, that the statute, requiring the party appealing from a justice's judgment to give bond and security for the appeal, applied as well to the plaintiff as to the defendant; but as the penalty of the bond is only to be in double the amount of the judgment below, it is evidently, in most cases, a very insufficient security. The circumstance that it is so, will not, however, warrant us in saying, that the surety can be made liable beyond the penalty of the bond. Here, the penalty is only for [$5.25]; and although the judgment does not state the amount of the costs, we feel obliged judicially to notice, that they must necessarily exceed that sum.
"The proper judgment, in this case, would have been, that the defendant recover of the plaintiff and Kerr, his security in the appeal bond, the costs of this suit, not exceeding the penalty of the bond; and if the same shall be found to exceed the said penalty, then the excess beyond of the said plaintiff."
6 Ala. at 476.
In Windham, Coats filed a counterclaim against the plaintiff Windham in a court presided over by a justice of the peace. A judgment was entered in favor of Coats and against Windham, including interest and costs. Windham appealed this judgment to the circuit court and executed a bond in the amount of $20 for the "payment of the principal, costs, charges, and all expenses," 8 Ala. at 287, related to the action. Windham's coplaintiffs, Rose and Beard, were designated as the sureties on the bond. Subsequently, a judgment was entered against Windham and the sureties on the bond for $193.35, which included the "sum of $5.39, debt and interest, eighty cents damages, and all costs." 8 Ala. at 286. Windham objected to the entry of the judgment on the bond, arguing that before the disposition of the case he had fully paid to the clerk of the court the $20, the amount of the penalty of the bond.
This Court stated:
"In McBarnett and Kerr v. Breed, 6 Ala. R. 476 [ (1844) ], the penalty of the *436 appeal bond was $5.25, this Court said, that we would judicially know, that the costs exceeded the penalty, and beyond that sum the obligors in the bond were not liable. Here the amount of the costs are not left to conjecture, but they are explicitly stated in the bill of exceptions. If no objection had been made and overruled, to the rendition of a judgment by the Circuit Court, for an amount exceeding the bond, we should have regarded the irregularity as a mere clerical misprision, amendable at the cost of the plaintiff in error. But the sureties there appeared by counsel, and resisted a recovery against them, for any thing more than the penalty; and the act of 1824, authorizes the revision of the judgment on error. Clay's Dig. 322, § 55. The payment of the amount of the bond, to the clerk of the Court, before judgment, did not, in itself, absolve the obligors from liability; inasmuch as the clerk had not authority, under the circumstances, to receive the money. Murray v. Charles, 5 Ala. 678 [ (1843) ]. To have made the payment effectual, it should have been shown, that it was assented to by the plaintiff, or that the money was paid over.
"The judgment of the Circuit Court must be reversed, and here rendered, that the plaintiff below recover of Windham and his sureties in the appeal bond, the debt, damages and costs, amounting to $20, and for the residue of the costs, the judgment will be against Windham alone."
8 Ala. at 287.
We find the authorities relied on by the plaintiffs to be distinguishable from this case. In both Breed and Windham, the principals charged with the payment of the judgment and costs of those actions in excess of the face amount of the bond were parties for whom a money judgment had been entered. In this case no money judgment had been entered against Regions Bank. The only judgment entered against Regions Bank granted declaratory relief in paragraphs 1 and 2 of the final judgment and declared Regions Bank jointly and severally liable with Advanced Realty for the $188 in court costs awarded by the trial court in paragraph 5 of the final judgment. The compensatory damages of $52,325.25 along with the $850 per month rental value of the real property from March 2003 to June 2004 and the $1,000 in punitive damages were awarded against only Advanced Realty.
If Regions Bank had not assumed liability to the plaintiffs by posting, as principal, the supersedeas bond, its liability in this case would have been limited to the $188 in court costs. Although Regions Bank posted the supersedeas bond in this case as the principal, staying the operation of the final judgment and ensuring the payment of the sums awarded to the plaintiffs, including those awarded from Advanced Realty pursuant to the terms and conditions of the bond, it had the responsibility to satisfy only its obligation under the bond up to its face amount of $83,891.56, which it did by paying that amount into the circuit court.
The total amount of damages claimed by the plaintiffs in this case, including those damages awarded in the final judgment, prejudgment and postjudgment interest, the attorney fee claimed pursuant to the supersedeas bond, and the postjudgment rental damages clearly exceed the amount of the supersedeas bond. However, because no money judgment was entered against Regions Bank, and because Regions Bank, as principal, had assumed liability under the supersedeas bond up to only $83,891.56, the plaintiffs cannot recover from Regions Bank any damages in excess of the amount *437 of the bond. Accordingly, the trial court's order satisfying the final judgment as to Regions Bank is due to be affirmed. To the extent that the plaintiffs are entitled to damages above the amount of the supersedeas bond, those damages must be collected from Advanced Realty, the party against whom the money damages were awarded in the final judgment.

II. The December 20, 2006, Order Satisfying the Final Judgment as to Advanced Realty
The plaintiffs argue that the trial court erred in entering its December 20, 2006, order satisfying the final judgment as to Advanced Realty because, they say, they are entitled to additional moneys from Advance Realty.

A. Prejudgment Accrued Interest
Paragraph 3 of the final judgment states:
"[The plaintiffs] are further entitled to, and do hereby recover from, the Defendant, Advanced Realty Co., Inc., the sum of $52,325.25 in compensatory damages, based upon the reasonable rental value of the property at issue, plus $850.00 cash [per] month plus accrued interest from March 2003 to June 1, 2004."

The plaintiffs concede in their reply brief to this Court that the trial court's award of $52,325.25 in compensatory damages against Advanced Realty included prejudgment interest. However, they argue that they are entitled to an additional award of prejudgment interest on that part of the judgment against Advanced Realty awarding rental value of the property of $850 per month from March 2003 through June 1, 2004. We agree. The plaintiffs state the following in their reply brief:
"First, [the trial court] clearly did award prejudgment interest in both the portion of the final judgment that actually calculated monetary damages ($52,325.25) as well as that portion of the [final judgment] that did not calculate the damage[s] figure (`... plus $850 cash [per] month plus accrued interest from March 2003 to June 1, 2004').
"As argued in the Trial Court, it is clear that the sum of $52,325.25 included prejudgment interest. That is clear from plaintiffs' Exhibit 19 which makes clear [they] sought damages in the amount of $850 per month from September of 1998 and that they also sought prejudgment interest on that sum. Accordingly, if the [trial court] had somehow disregarded the interest element set forth in Exhibit 19, the maximum amount of compensatory damages that could have been awarded in the `calculated' portion of its final judgment (i.e., from September 1998 through February 2003) would have been $41,900 ($850 × 54-$4,000[[6]] = $41,900).
"The question then becomes, in light of the Trial Court's award of prejudgment interest for the period of time from September 1998 through February 2003, would the Court not also award prejudgment on the `reasonable rental damages' from March 2003 to June 2004? Fortunately, this is not a question we need to grapple with because the [trial court] expressly awarded prejudgment interest for that period of time when it stated in the final judgment that [the plaintiffs] were due `plus $850 cash [per] month plus accrued interest from March 2003 to June 1, 2004.'"
(Plaintiffs' reply brief, at 10-11.)
Rule 53, Ala. R.App. P., which grants this Court and the Court of Civil Appeals *438 the authority to affirm a judgment or an order without an opinion, provides as follows in subsection (d):
"An order of affirmance issued by the Supreme Court or the Court of Civil Appeals by which a judgment or order is affirmed without an opinion ... shall have no precedential value ... and shall not be used by any court within this state, except for the purpose of establishing the application of the doctrine of law of the case, res judicata, collateral estoppel, double jeopardy, or procedural bar."
This Court has stated:
"`"Under the doctrine of the `law of the case,' whatever is once established between the same parties in the same case continues to be the law of that case, whether or not correct on general principles, so long as the facts on which the decision was predicated continue to be the facts of the case." Blumberg v. Touche Ross & Co., 514 So.2d 922, 924 (Ala.1987). See also Titan Indem. Co. v. Riley, 679 So.2d 701 (Ala.1996). "It is well established that on remand the issues decided by an appellate court become the `law of the case,' and that the trial court must comply with the appellate court's mandate." Gray v. Reynolds, 553 So.2d 79, 81 (Ala.1989).'"
Bagley v. Creekside Motors, Inc., 913 So.2d 441, 445 (Ala.2005) (quoting Southern United Fire Ins. Co. v. Purma, 792 So.2d 1092, 1094 (Ala.2001)).
In the final judgment, the trial court expressly awarded the plaintiffs "$850.00 cash [per] month plus accrued interest from March 2003 to June 1, 2004." Regions Bank and Advanced Realty appealed this judgment to the Court of Civil Appeals; that court affirmed the judgment of the trial court, without an opinion. Regions Bank and Advanced Realty then petitioned this Court for a writ of certiorari contending that the Court of Civil Appeals erred in affirming the trial court's judgment based on its finding that they were not bona fide purchasers of the property in question and that the Court of Civil Appeals erred in holding that the trial court did not err in admitting parol evidence concerning the priority of the mortgages that allegedly contradicted the terms of a purchase and sale agreement. Although this Court's action has no bearing on the law of the case, this Court initially granted the petition for a writ of certiorari but later quashed it.
Based on the foregoing, we conclude that the trial court's award of "$850.00 cash [per] month plus accrued interest from March 2003 to June 1, 2004," to the plaintiffs has become the law of the case and that the plaintiffs are entitled to an interest award from Advanced Realty[7] on $850 per month from March 1, 2003, through June 1, 2004.

B. Postjudgment Interest
In their "Motion to Enforce Liability and Judgment on Supersedeas Bond," the plaintiffs sought postjudgment interest in the amount of $17,979.96 payable at the statutory rate of 12% from June 2, 2004, through July 17, 2006. Section 8-8-10, Ala.Code 1975, provides:
"Judgments for the payment of money, other than costs, if based upon a *439 contract action, bear interest from the day of the cause of action, at the same rate of interest as stated in said contract; all other judgments shall bear interest at the rate of 12 percent per annum ...."
Postjudgment interest begins to accrue on the date the trial court entered its judgment. Elmore County Comm'n v. Ragona, 561 So.2d 1092 (Ala.1990).
The plaintiffs' entitlement to postjudgment interest is largely undisputed; the amount paid by Regions Bank to the trial court  $83,891.56, the face amount of the supersedeas bond  included postjudgment interest. We conclude that the plaintiffs are indeed entitled to an award of postjudgment interest on the damages awarded them in the final judgment payable at 12% per annum from June 2, 2004  the date the final judgment was entered  through July 17, 2006  the date the Court of Civil Appeals transmitted its certificate of judgment to the trial court. To the extent that it is determined by the trial court on remand that the postjudgment interest to which the plaintiffs are entitled exceeds the amount of the supersedeas bond, the excess is recoverable only from Advanced Realty, as discussed above in Part I of this opinion.
We conclude that the plaintiffs are entitled to both additional prejudgment interest and postjudgment interest and, therefore, that the trial court's order satisfying the final judgment as to Advanced Realty is due to be reversed. Because we are reversing this portion of the trial court's judgment for the foregoing reasons, we pretermit any discussion of the plaintiffs' additional argument that the trial court's order satisfying the final judgment as to Advanced Realty should be reversed on procedural grounds.

III. Postjudgment Damages for Lost Rent
On October 4, 2006, the plaintiffs filed a motion with the trial court entitled "Motion to Clarify And/Or Augment Final Judgment" seeking additional damages not awarded by the trial court in the final judgment. The plaintiffs sought $850 per month plus interest initially from October 7, 2004  the date execution of the final judgment was stayed  until July 17, 2006  the date the Court of Civil Appeals' certificate of judgment was transmitted to the trial court  as compensation for the period they were excluded from their property while the case was pending on appeal and the execution of the final judgment was stayed. The plaintiffs subsequently sought postjudgment damages for lost rent and interest from June 2, 2004, the date the judgment was entered by the trial court through the date the Court of Civil Appeals' certificate of judgment was transmitted to the trial court.
Section 6-6-280, Ala.Code 1975, which is found in Article 7 of Chapter 6 of Title 6 of the Code, states:
"(a) A plaintiff commencing an action for the recovery of lands or the possession thereof has an election to proceed by an action of ejectment or by an action in the nature of an action of ejectment as is provided in subsection (b) of this section.
"(b) An action for the recovery of land or the possession thereof in the nature of an action in ejectment may be maintained without a statement of any lease or demise to the plaintiff or ouster by a casual or nominal ejector, and the complaint is sufficient if it alleges that the plaintiff was possessed of the premises or has the legal title thereto, properly designating or describing them, and that the defendant entered thereupon and unlawfully withholds and detains *440 the same. This action must be commenced in the name of the real owner of the land or in the name of the person entitled to the possession thereof, though the plaintiff may have obtained his title thereto by a conveyance made by a grantor who was not in possession of the land at the time of the execution of the conveyance thereof. The plaintiff may recover in this action mesne profits and damages for waste or any other injury to the lands, as the plaintiff's interests in the lands entitled him to recover, to be computed up to the time of the verdict."
The plaintiffs' amended complaints satisfied the pleading criteria for an action in the nature of an ejectment under § 6-6-280(b). The plaintiffs sought immediate possession of the real property, claiming rightful ownership and title to the real property by virtue of the purchase-money mortgage and the foreclosure deed. The mortgage and the foreclosure deed, which set forth a description of the real property being claimed by the plaintiffs, were both attached to the plaintiffs' second amended complaint and to the original complaint for a declaratory judgment, which was incorporated by reference in the first amended complaint. Additionally, the amended complaints also alleged that Regions Bank and Advanced Realty had willfully and wantonly continued to exercise dominion over the real property, for which the plaintiffs sought both compensatory and punitive damages, as well as mesne profits.[8] Finally, although not expressly stated, implicit in the final judgment is the trial court's determination that the plaintiffs were entitled to immediate possession of the real property in issue.
Because the plaintiffs had asserted a claim in the nature of ejectment pursuant to § 6-6-280(b), they were able to seek a judgment for postjudgment rents against Regions Bank and Advanced Realty pursuant to § 6-6-293, Ala.Code 1975, as an additional remedy under Article 7. Section 6-6-293, Ala.Code 1975, provides:
"The plaintiff may have judgment against the defendant for the rent of the premises which accrues after judgment and before the delivery of possession by motion in the circuit court where the judgment was entered, on 10 days' notice in writing, unless the judgment is stayed by appeal and bond, in which case the motion may be made after affirmance of the judgment."
(Emphasis added.)
Here, it is undisputed that Advanced Realty continued to occupy the real property following the trial court's entry of the final judgment, which found that title to the real property was properly vested in the plaintiffs and that Advanced Realty had wrongfully exercised dominion and control over the real property. The execution *441 of the final judgment was stayed by the posting of a supersedeas bond, and Advanced Realty continued to occupy the real property while the case was pending on appeal. The Court of Civil Appeals affirmed the final judgment and transmitted its certificate of judgment to the trial court on July 17, 2006. Advanced Realty delivered possession of the real property to the plaintiffs on July 31, 2006. Following the affirmance of the final judgment on appeal, the plaintiffs moved the trial court for an award of postjudgment rental damages at the rate of $850 per month and interest to compensate them for the period Advanced Realty continued to occupy the real property following the entry of the final judgment declaring the plaintiffs to be the rightful owners of the property and while the case was pending on appeal.[9] Based on the plain language of § 6-6-293, the plaintiffs were entitled to recover from Advanced Realty[10] postjudgment rents for the period Advanced Realty continued to possess the real property after the trial court entered the final judgment on June 2, 2004, through July 31, 2006, the date Advanced Realty surrendered possession of the real property to the plaintiffs. Accordingly, we reverse the trial court's judgment to the extent that it denied the plaintiffs' claim for postjudgment rents and interest.

IV. Attorney Fee for Successfully Defending Appeal
The plaintiffs next argue that the trial court erred in denying their motion seeking to recover as "costs" their attorney fees incurred in successfully defending Regions Bank and Advanced Realty's appeal of the final judgment; such fees, they say, are damages recoverable in this State as costs under the supersedeas bond. It is well settled that "`Alabama follows the "American rule," whereby attorney fees may be recovered if they are provided for by statute or by contract or if they are called for by special equity, such as in proceedings where the attorney's efforts create a "common fund" out of which fees may be paid.'" City of Bessemer v. McClain, 957 So.2d 1061, 1078 (Ala.2006) (quoting Battle v. City of Birmingham, 656 So.2d 344, 347 (Ala.1995)). However, relying on Hudson v. Hudson, 555 So.2d 1084 (Ala.Civ.App.1989), the plaintiffs argue that they are entitled to recover as "costs" under the supersedeas bond the attorney fees they incurred in successfully defending Regions Bank and Advanced Realty's appeal. Regions Bank asks this Court to overrule Hudson to the extent it *442 contravenes the "American rule" with regard to the award of attorney fees.
In Hudson, the wife was found to be in contempt of court for failing to deed certain real property to the husband pursuant to a divorce judgment. The wife posted a supersedeas bond in the amount of $63,750 and petitioned the Court of Civil Appeals for a writ of certiorari. The supersedeas bond stated that the wife agreed to "satisfy such judgment, penalties, costs, including costs of appeal as may be rendered in this case" if the wife was unsuccessful on the petition to the Court of Civil Appeals.[11]Hudson, 555 So.2d at 1085.
After the wife's petition for a writ of certiorari was denied, the husband sued on the supersedeas bond to recover, among other things, an attorney fee, taxes and interest paid on the mortgage during the time the wife unlawfully retained title to the property, and expert fees required to prove depreciation on the land and the interest on the value of the property. The trial court awarded the husband the relief he sought. The wife argued on appeal that the attorney fee, taxes and interest, and the expert-witness fees were not specifically designated as damages recoverable under the supersedeas bond and that the husband could not recover those damages as "costs of appeal." Hudson, supra. In affirming the trial court's judgment, the Court of Civil Appeals stated:
"Implicit in its opinion, the trial court determined that certain costs and damages were `costs of appeal' pursuant to Rule 8, Alabama Rules of Appellate Procedure. Rule 8, [Ala. R.App. P.], requires an appellant to execute a supersedeas bond with sufficient sureties to stay execution of the judgment. The purpose for requiring the bond is as stated:
"`[T]o keep the parties in statu quo pending the appeal. This purpose, we now say, reached not only to possession of the property, but every other consequence of the judgment, including costs, and the evidential status and value of the judgment pending appeal.'
"Fidelity & Deposit Co. v. Torian, 221 Ala. 131, 133, 127 So. 829, 831 (1930). See also Osborn v. Riley, 331 So.2d 268, 274 (Ala.1976).
"The committee comments to Rule 8,[Ala. R.App. P.], state in part as follows:
"`Subdivision (a) provides for the stay of execution of a judgment pending appeal in three situations: . . . In so providing, it supersedes Title 7, §§ 793, 794 and 795. . . .'
"Code 1940, title 7, § 794, which was superseded by Rule 8, provided in part as follows:
"`If the decree or judgment be for the payment of money, and also for the performance of some other act or duty, or for the recovery of property, real or personal, or the possession thereof, or for the sale of property, real or personal, and the party appealing wishes to supersede the execution of such judgment or decree, he must,. . . also execute bond with good and sufficient sureties, payable to the clerk or register, in such sum as the judge may in writing prescribe, with condition to pay all such costs and damages as any party aggrieved may sustain by reason of the wrongful appeal and suspension of the execution of the judgment or decree; . . . .'
"Whereas title 7, § 794, required that the word `damages' be included in order for damages to be recoverable under a *443 supersedeas bond, we find that a clear reading of Rule 8 reveals that there is no such requirement under the rule. Therefore, it is not required that the specific items the husband sought to recover as `damages' be set out in the supersedeas bond. Consequently, we reject the wife's contention that the award of attorney fees, expert fees, taxes, and interest paid on the mortgage was improper on this ground."
Hudson, 555 So.2d at 1085-86.
The holding of the Court of Civil Appeals in Hudson is premised upon the statement in the opinion that "[i]mplicit in its opinion, the trial court determined that certain costs and damages were `costs of appeal' pursuant to Rule 8, Alabama Rules of Appellate Procedure." 555 So.2d at 1085. We find no basis in Rule 8 to support this conclusion by the trial court or the Court of Civil Appeals. As noted by the Court of Civil Appeals, the former Title 7, § 794, Ala.Code 1940 (Recomp.1958), which was superseded by Rule 8, required the party appealing a judgment entered by the trial court to "`execute bond . . . with condition to pay all such costs and damages as any party aggrieved may sustain by reason of the wrongful appeal and suspension of the execution of the judgment or decree; . . .'" (Some emphasis added.) Rule 8 provides:
"(a) Stay by Supersedeas Bond. The appellant shall not be entitled to a stay of execution of the judgment pending appeal (except as provided in Rule 62(e), Ala. R. Civ. P.) unless the appellant executes bond with good and sufficient sureties, approved by the clerk of the trial court, payable to the appellee (or to the clerk or register if the trial court so directs), with condition, failing the appeal, to satisfy such judgment as the appellate court may render, when the judgment is:
"(1) For the payment of money only, in an amount equal to 150% of the amount of the judgment if the judgment does not exceed $10,000.00, or 125% if the judgment exceeds $10,000.00;
"(2) For the payment of money and also for the performance of some other act or duty, or for the recovery or sale of property or the possession thereof, in such sum, in addition to the sum required for money judgments only in (1) above, as the trial court may in writing prescribe; or if appellant wishes to supersede the judgment as to the payment of money only, the requirements of (1) above shall apply;
"(3) Only for the performance of some act or duty, or for the recovery or sale of property or the possession thereof (or if the judgment includes the payment of money and the appellant does not wish to supersede the judgment in that respect), in such sum as the trial court may in writing prescribe.
"The approval of the supersedeas bond by the clerk of the trial court, unless contested by the opposing party, shall constitute a stay of the judgment when the judgment is for the payment of money only, or the payment of money and some other act and the appellant wishes to supersede the judgment as to the payment of money only. In the event the clerk declines to approve the bond, or the clerk's approval is contested, the requirements of (b) below shall apply."
(Emphasis added.)
Rule 8 does not include the express language from § 794 requiring as a condition of the bond the payment of "costs and damages as any party aggrieved may sustain by reason of the wrongful appeal and suspension of the execution of the judgment or decree." Rule 8 simply requires, as a condition of the bond, the satisfaction *444 of "such judgment as the appellate court may render." Damages are no longer expressly recoverable under a supersedeas bond pursuant to Rule 8. Thus, there was no basis in Hudson, decided after the adoption of Rule 8, for the trial court and the Court of Civil Appeals to conclude that the husband was entitled to damages in the form of an attorney fee as costs of the appeal under the supersedeas bond. Therefore, Hudson provides no authority for the plaintiffs in this case to recover damages in the form of an attorney fee as costs of the appeal under the supersedeas bond.[12] To the extent that Hudson provides otherwise, it is overruled.
The plaintiffs also rely heavily on the decision in Osborn v. Riley, 331 So.2d 268 (Ala.1976), for their contention that they are entitled to damages in the form of an attorney fee as costs of the appeal under the supersedeas bond. In Osborn, the plaintiffs sued the defendants seeking to have set aside a deed by which the plaintiffs had conveyed to the defendants a large tract of land. The trial court entered a judgment for the plaintiffs setting aside the deed based on a finding of undue influence. The defendants filed an application with the trial court to fix the amount of a supersedeas bond. The trial court granted the application conditioned on the requirement that the defendants pay any judgment the appellate court might render as well as "`such costs and damages as any party may sustain by reason of the wrongful appeal and suspension of the decrees.'" Osborn, 331 So.2d at 270. The defendants obtained a supersedeas bond from Aetna Casualty and Surety Company naming Aetna as surety.
This Court affirmed the trial court's judgment on appeal. Subsequently, the plaintiffs sued on the supersedeas bond seeking damages and contending that the defendants' failure to successfully prosecute their appeal and to pay all costs and damages constituted a breach of the supersedeas bond. The defendants contended that the plaintiffs failed to prove they were damaged by the unsuccessful appeal or that the appeal was wrongful. The trial court entered a judgment for the plaintiffs and awarded them $20,000 plus costs. Osborn, supra.
In affirming the judgment of the trial court, this Court stated:
"The third issue presented for our review arises from [the defendants'] contention that the [plaintiffs] suffered no *445 injury as a result of the appeal and the accompanying suspension of [the] judgment during the pendency of the appeal. It is undisputed that, during the appeal, [the plaintiffs] were in possession of the land over which the dispute arose. [The defendants] contend that because the [plaintiffs] were in possession of the land over which the dispute arose, it cannot be argued that they were harmed by the suspension of the court's decree.
"These arguments are not persuasive in view of the rule of our cases. The purpose of a supersedeas bond is `to keep the parties in status quo pending the appeal. This purpose . . . reach[es] not only to possession of the property, but every other consequence of the judgment, including costs, and the evidential status and value of the judgment pending appeal. Delay in the settlement of the title in the plaintiff was consideration enough to support the bond.' Fidelity & Deposit Co. v. Torian, 221 Ala. 131, 133, 127 So. 829, 831 (1930). It was there held that there could be recovery on the bond notwithstanding appellant was not in possession. In the instant case, the [plaintiffs] were damaged not only by a delay in the settlement of title, but also by the expense of defending their judgment.
". . . .
"The fourth and final issue raised on appeal challenges Alabama case law allowing the recovery of attorney's fees paid for defending the appeal as an element of damages to be recovered under the supersedeas bond in a suit of this character. [The defendants] argue that neither the statute providing for supersedeas bonds, nor the decree in the instant case, specifically includes attorneys' fees as an element of damages. In the absence of express statutory or contractual provision to the contrary, [the defendants] contend that there is no `inherent right to have attorney's fees paid by the opposing side.' On the basis of case law from other jurisdictions which is in conflict with the existing Alabama rule, [the defendants] urge this Court to hold that damages in suits on supersedeas bonds in a suit of this character should include only those damages resulting from the stay of execution of the judgment. Specifically [the defendants] ask that we overrule our case of Drake v. Webb, 63 Ala. 596 (1879) and those cases following it.
"[The defendants] refer[] the Court to its recent opinion in White v. State, 294 Ala. 502, 319 So.2d 247 (1975), in which this Court held that attorneys' fees were not recoverable as `just compensation' in eminent domain proceedings. However, the issue in White was a matter of first impression in Alabama. In contrast, the issue in the instant case involves the recovery of attorney's fees as an element of damages under the supersedeas bond, in a suit of this character, and is the subject of a long-standing rule in this state. See, e.g. Dempsey v. Gay, 227 Ala. 20, 148 So. 438 (1933); Fidelity & Deposit Co. v. Torian, 221 Ala. 131, 127 So. 829 (1930); Caldwell v. United States Fidelity & Guar. Co., 205 Ala. 463, 88 So. 574 (1921); Drake v. Webb, supra; Wheeler v. Fuller, 4 Ala.App. 532, 58 So. 792 (1912). [See Anno: `Attorneys fees paid by appellee in resisting unsuccessful appellate review as damages recoverable on appeal bond' 37 ALR2d 525.]
"In Drake v. Webb, supra, Justice Stone makes the following statement as the rationale for the Alabama rule:
"`We find nothing in the condition of the present bond which we consider unreasonable. The damages imposed are not a tax, or clog, placed on the appellant's right of appeal. That he *446 could have had without a supersedeas bond, on giving security for costs of appeal. Such security for costs would have imposed on his surety no other liability than to pay the costs of appeal, if unsuccessful. This is a mere regulation of the right of appeal, for the security of the officers of court. But, when an aggrieved suitor desires to go further, and suspend the execution of a judgment or decree rendered against him, this is not simply a question of the right of appeal. It goes much beyond that. Very great damage may result from the appeal and the suspension. The condition of a bond, entailing these consequences, should be so adjusted and prescribed, as to secure the appellee against all loss or damage that may result proximately from the appeal and supersedeas. Attorney's fees are proximate damages, cast on the appellee by the appeal, and are, therefore, within the condition of the bond. We are not able to distinguish, in principle, between this question and the kindred one which arises in suits on injunction and detinue bonds.'"
Osborn, 331 So.2d at 273-75.
Although Osborn was decided after Rule 8, Ala. R.App. P., became effective, it addressed a supersedeas bond that was executed before § 794 was superseded by Rule 8, Ala. R.App., see Rule 49, Ala. R.App. P. Additionally, the supersedeas bond executed in Osborn obligated the appellants to pay both costs and damages, but there was no reference to the payment of damages in the supersedeas bond executed in this case. Specifically, in Osborn, the supersedeas bond required the appellants to pay "`such costs and damages as any party may sustain by reason of the wrongful appeal and suspension of the decrees.'" Osborn, 331 So.2d at 270 (emphasis added). However, the supersedeas bond in this case provides only as follows:
"NOW, therefore, the condition of the foregoing obligation is such that, if the appellant shall prosecute this appeal to effect, and satisfy such judgment, penalties, and costs, including costs of appeal as may be rendered in this case, then the said obligation to be null and void, otherwise to remain in full force and effect."
Therefore, although the supersedeas bond in Osborn expressly provides for the payment of damages, the supersedeas bond executed in this case is silent with respect to damages. Accordingly, Osborn provides no authority for the recovery of an attorney fee as costs of the appeal under the supersedeas bond in this case.
Likewise, in Ex parte Home Indemnity Insurance Co., 374 So.2d 1356 (Ala.1979), the trial court entered two judgments against Home Indemnity declaring that it had a duty to defend and to indemnify Reed Equipment Company in a negligence action brought by third parties. Home Indemnity sought to appeal the judgments, and the trial court required it to file a supersedeas bond containing the following language:
"`Now, therefore, the condition of the foregoing obligation is such that, if Appellant fails in the appeal it will pay such judgment as the Appellate Court may render in the premises, and all such costs, and damages as any party aggrieved may sustain by reason of the execution of the decree, then the said obligation to be null and void, otherwise to remain in full force and effect.'"
Ex parte Home Indem. Ins. Co., 374 So.2d at 1357.
Home Indemnity petitioned this Court for a writ of mandamus arguing that the trial court could not require it to post a supersedeas bond containing the above-quoted *447 language because a supersedeas bond with such conditions would make Home Indemnity liable for any attorney fees incurred by Reed Equipment in defending the appeal of the declaratory judgments, should Home Indemnity's appeal be unsuccessful. In denying Home Indemnity's petition, this Court explained the holding in Osborn as follows:
"This argument is totally without merit. In Osborn v. Riley, 331 So.2d 268 (Ala. 1976), this court reaffirmed a long line of Alabama decisions which held attorneys' fees were proximate damages recoverable in an action on a supersedeas bond where an unsuccessful appellant had superseded that portion of a judgment requiring the performance of some act or duty other than the payment of money. Osborn, therefore, allows trial judges to require supersedeas bonds conditioned as the one at issue in this case, where the judgment or decree requires an act or duty other than the payment of money.
"Home Indemnity implies that Rule 8, [Ala. R.App. P.], changed the law regarding supersedeas bonds since Rule 8 supplanted Code 1940, Title 7, §§ 793, 794, and 795. While it is true the above sections were replaced by Rule 8, and thus left out of the 1975 Code, they were in fact incorporated into Rule 8. See Committee Comments to Rule 8, [Ala. R.App. P.]. Rule 8 still recognizes there are three separate types of judgments that can be superseded, viz.: (1) judgments for the payment of money only; (2) judgments for the payment of money which also require the performance of, or the staying of the performance of, acts or duties other than the payment of money; and (3) judgments requiring the performance of, or the staying of the performance of, acts other than the payment of money.
"Rule 8(a)(2), applicable to this case, definitely allows the trial judge to shape the supersedeas bond to conform to the facts of the case. This is demonstrated by the language: `. . . in such sum, in addition to the sum required for money judgments only in (1) above, as the trial court may in writing prescribe; . . . .' Furthermore, since the former statutes governing supersedeas bonds were incorporated in Rule 8 without substantial change, former decisions interpreting those statutes govern interpretation of the rule, there being no intention to the contrary expressed in the rule. See Lewis v. Hitt, 370 So.2d 1369 (Ala.1979)."
Ex parte Home Indem. Ins. Co., 374 So.2d at 1357-58.
Ex parte Home Indemnity is not authority for allowing the plaintiffs to recover as costs an attorney fee in this case because Home Indemnity relied on Osborn, which addressed a supersedeas bond executed before the effective date of Rule 8, Ala. R.App. P. Additionally, we note that the statement in Osborn that § 794, Ala. Code 1940 (Recomp.1958), "[was] in fact incorporated into Rule 8" is not entirely accurate given the fact that the language requiring as a condition of the bond the payment of "costs and damages as any party aggrieved may sustain by reason of the wrongful appeal and suspension of the execution of the judgment or decree" is, as discussed above, absent from Rule 8, Ala. R.App. P.
Accordingly, we conclude that the plaintiffs are not entitled to recover damages in the form of an attorney fee as "costs of the appeal" under the supersedeas bond.

Conclusion
In summary, the trial court's order of November 22, 2006, satisfying the final judgment as to Regions Bank is affirmed; its order of December 20, 2006, satisfying *448 the final judgment as to Advanced Realty is reversed. The December 20, 2006, order is reversed to the extent it denies the plaintiffs' motion for prejudgment accrued interest. Its February 20, 2007, order is affirmed to the extent it denies the plaintiffs' motion for an attorney fee incurred in defending the appeal and is reversed to the extent it denies the plaintiffs' motion for postjudgment rental damages. The case is remanded for proceedings consistent with this opinion.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
COBB, C.J., and LYONS, WOODALL, STUART, PARKER, and SHAW, JJ., concur.
MURDOCK, J., concurs in part and concurs in the result.
MURDOCK, Justice (concurring in part and concurring in the result).
I fully concur in the main opinion with the exception of the rationale stated in Part IV. I write to express a different rationale and, in so doing, make clear that my view regarding the nonrecoverability of attorney fees under an appellate supersedeas bond is based on grounds more fundamental than the differences in the wording of Tit. 7, § 794, Ala.Code 1940 (Recomp.1958), and Rule 8, Ala. R.App. P., or whether a trial court has insisted that the bond contain a provision for the payment of "damages" resulting from an appeal, or only the "costs" or the "judgment" resulting from the appeal.
Not only are a party's costs for legal representation on appeal not properly deemed to be part of the "costs of appeal," I believe it improper to consider them, as did the Court in Osborn v. Riley, 331 So.2d 268 (Ala.1976), to be "damages" sustained because the aggrieved suitor not only has appealed, but has "desire[d] to go further, and suspend the execution of a judgment or decree rendered against him." 331 So.2d at 274. The suspension of a judgment through the posting of a supersedeas bond has no correlation to the fact that the appellee must pay for legal representation in the appeal. It is in fact the appeal itself, not the suspension of the judgment during the appeal, that causes the appellee to incur additional attorney fees to defend against the appeal. The holding in Osborn, I submit, therefore, is without the logical underpinning upon which the opinion itself purports to rely.
Moreover, the holding in Osborn runs contrary to the essential reasons that we follow the American rule, rather than the English rule, regarding attorney fees. Similarly, the notion, as expressed in Ex parte Home Indemnity Insurance Co., 374 So.2d 1356 (Ala.1979), that trial courts, in certain types of cases, could require language in a supersedeas bond that would make the unsuccessful appellant responsible for the appellee's attorney fees on appeal leaves an "unlevel playing field" in such cases in two respects:
1. It gives a potential strategic and negotiating advantage to appellees in such cases since, unlike appellants, they can advocate their position on appeal without posting a supersedeas bond that could make them responsible for the appellate attorney fees of their opponent; and
2. It generally allows plaintiffs who have failed to obtain a judgment in their favor in the trial court access to the appellate courts to vindicate their position without running the risk of responsibility for their opponent's appellate attorney fees, while not extending that same right to defendants who have suffered an adverse trial result.
Consistent with the fundamental nature of my views, I would overrule not only *449 Hudson v. Hudson, 555 So.2d 1084 (Ala. Civ.App.1989),[13] but also Osborn and Home Indemnity insofar as they reflect different views.
NOTES
[1] Mesne profits are defined as "profits of an estate received by a tenant in wrongful possession between two dates." Black's Law Dictionary 1246 (8th ed.2004).
[2] It does not appear from the record whether the trial court expressly ruled on the partial-summary-judgment motion filed by Regions Bank and Advanced Realty on the plaintiffs' claim seeking compensatory and punitive damages and alleging ownership and a wrongful exercise of dominion and control by Regions Bank and Advanced Realty over the real property. However, because the trial court awarded the plaintiffs both compensatory and punitive damages against Advanced Realty it must have concluded that the plaintiffs were entitled to recover on the claim alleging a wrongful exercise of dominion and control over the real property.
[3] Rule 8, Ala. R.App. P., requires that the supersedeas bond be executed in amount equal to 125% of the amount of the judgment when the judgment exceeds $10,000.
[4] The amounts $70,765.89 and $4,502.64 are the sums the plaintiffs use in their appellate brief (the brief actually states the total as being $70,675.89, but this is clearly a typographical error); those amounts vary slightly from the actual sums set forth by the plaintiffs in their motion. The amount of the "prejudgment" accrued interest sought by the plaintiffs varies slightly in the record. This Court will use the sums of $70,765.89 and $4,502.64 for purposes of this opinion. The parties are by no means bound by this Court's mathematical computations, and, if necessary, the amounts may be recomputed upon remand.
[5] The plaintiffs originally claimed postjudgment damages for lost rent and interest from October 7, 2004, the date execution of the final judgment was stayed through July 17, 2006, the date the Court of Civil Appeals transmitted its certificate of judgment to the trial court and the stay of execution of the final judgment was lifted. In this motion the plaintiffs claimed postjudgment rental damages and interest from the date the final judgment was entered on June 2, 2004, through July 17, 2006, the date the certificate of judgment was transmitted.
[6] The parties stipulated to a $4,000 credit for Advanced Realty for expenses incurred by Advanced Realty for improvements to the property.
[7] The compensatory damages based on the reasonable rental value of the real property were awarded only against Advanced Realty. Therefore, only Advanced Realty is liable for this award of interest. Additionally, as discussed in Part I of this opinion, Regions Bank's liability is limited to the face amount of the supersedeas bond; to the extent the addition of the prejudgment interest to the amount of the judgment would exceed the amount of the supersedeas bond, that excess is recoverable only from Advanced Realty.
[8] The parties' treatment of the plaintiffs' claim alleging ownership and wrongful exercise of dominion and control by Regions Bank and Advanced Realty over the real property as one based on trespass in the motion for a partial summary judgment and the response to the motion does not affect this Court's conclusion that the plaintiff had stated a claim in the nature of ejectment pursuant to § 6-6-280(b), because a trespass claim and a claim in the nature of ejectment are similar. An action in the nature of ejectment is "not only ... an efficient means for the adjudication of the right to possession, but also [is] a favored action for the trial of the legal title to land, that action being similar in nature to both an action in trespass and an action to quiet title. Kelley v. Mashburn, 286 Ala. 7, 236 So.2d 326 (1970); McCormick v. McCormick, 221 Ala. 606, 130 So. 226 (1930); Vasko v. Jardine, 346 So.2d 962 (Ala.1977); Findlay v. Hardwick, 230 Ala. 197, 160 So. 336 (1935)." MacMillan Bloedell, Inc. v. Ezell, 475 So.2d 493, 497 (Ala.1985) (emphasis added).
[9] The plaintiffs' original motion was entitled "Motion to Clarify And/Or Augment Final Judgment Entered June 2, 2004." It is well settled that the substance of a motion, not its nomenclature, is controlling; the relief sought in a motion determines how the motion is treated. Ex parte Lang, 500 So.2d 3 (Ala. 1986); and Campbell v. Campbell, 718 So.2d 76 (Ala.Civ.App.1998). The trial court originally denied this motion, and the plaintiffs moved the trial court to alter, amend, or vacate its order denying the motion. In their postjudgment motion, the plaintiffs presented the trial court with the authority in support of the relief that they had already argued they were entitled to by citing § 6-6-293, Ala.Code 1975. Thus, the issue was properly presented to the trial court and preserved for appellate review.
[10] Again, because the trial court awarded compensatory damages based on the reasonable rental value of the real property against only Advanced Realty, only Advanced Realty would be liable for the postjudgment rental damages. Additionally, as discussed in Part I of this opinion, Regions Bank's liability is limited to the face amount of the supersedeas bond; to the extent that the addition of the postjudgment rental damages would exceed the amount of the supersedeas bond, that excess is recoverable only from Advanced Realty.
[11] This language is substantially similar to the language of the supersedeas bond in this case.
[12] In Life Insurance Co. of Georgia v. Johnson, 725 So.2d 934 (Ala. 1998), the defendant insurance company argued on appeal that the trial court's order incorrectly authorized the recovery of postjudgment interest under the supersedeas bond. The defendant contended that the supersedeas bond did not specifically mention "interest"; therefore, it contended, there was no obligation under the bond to pay postjudgment interest. This Court discussed the holding in Hudson and stated that postjudgment interest "might be considered to be included within the `costs of appeal.'" Johnson, 725 So.2d at 941 (emphasis added). The discussion in Johnson relating to Hudson, however, is dicta. The basis of this Court's affirming the award of postjudgment interest in Johnson was rooted in the language of the supersedeas bond and this Court's judgment in an earlier appeal in that same case. This Court stated:

"[T]he supersedeas bond provided that the sureties promised to `satisfy such judgment. . . as may be awarded.' The `judgment' of this Court on appeal in [Life Insurance Co. of Georgia v.] Johnson [, 701 So.2d 524 (Ala. 1997),] was that Ms. Johnson was entitled to recover $3 million in punitive damages, `with interest.' Thus, the bond obligated the sureties to `satisfy' that `judgment.'"
Johnson, 725 So.2d at 941. The language of the bond and this Court's holding is entirely consistent with Rule 8, Ala. R.App. P., which requires that the supersedeas bond be executed "with condition, failing the appeal, to satisfy such judgment as the appellate court may render."
[13] I note that, in addition to the other matters discussed in this writing, the trial court had authority in Hudson to award attorney fees as part of its judgment in a domestic-relations action.